Reid S. Moule, J.
The defendant, Fred Astaire, moves pursuant to CPLR 3211 to dismiss the complaint as to him on the grounds that the court lacks jurisdiction of the person.
The plaintiff cross-moves for an order denying the defendant Fred Astaire’s motion and in the alternative for an order directing disclosure by all the defendants of facts unavailable to the plaintiff on the question of jurisdiction, and for an immediate trial on the question of jurisdiction.
In this action, the plaintiff, a 74-year old woman seeks to recover $62,181.60 allegedly paid by her on dance instruction contracts entered into between May 23,1964 and August 27,1965 and also $200,000 in punitive damages. The complaint alleges that the contracts are void by reason of section 394 of the General Business Law in that the total payments on the contracts exceed by more than 5%, the prorated cost of the instruction actually received at the time of payment. It further alleges that the plaintiff was induced to enter into the contracts through the fraud, deceit and misrepresentations of the defendants.
Fred Astaire, a world famous dancer, is a nondomiciliary of the State of New York. The summons and complaint were served on him at his residence in Beverly Hills, California.
*804 Under CPLR 302, a New York court may exercise personal jurisdiction over a nondomiciliary who in person or through an agent:
‘ ‘ 1. transacts any business within the state; or
“ 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
“ 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action-for defamation of character arising from the act, if he,
“ (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
“ (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
“ 4. owns, uses or possesses any real property situated within the state.”
In order to determine whether Fred Astaire comes under one or more of these subdivisions, we must take a look at the defendants ’ operation. It appears that on December 12, 1953, Fred Astaire granted to the defendant Fred Astaire Dance Studios Corporation, a New York corporation, a license to use his name and photographs in connection with the operation of dance studios. By the terms of this agreement, Fred Astaire or his estate was to receive $600 a week for 40 years, or a total of $1,248,000. Under this agreement, Fred Astaire agreed that Fred Astaire Dance Studio Corporation could sublicense others to use his name and photographs. Apparently, pursuant to this agreement, Fred Astaire Dance Studio Corporation granted a sublicense to the defendant, Western New York Dance Studios, Inc. The defendants, John North, John Saionz and John Carpenter, apparently were instructors at Western New York Dance Studios, Inc., and may also have been officers, directors or stockholders of Western New York Dance Studios Corp. The license agreement also proxdded that Fred Astaire Dance Studios Corporation would consult and advise xvith Fred Astaire in connection with the preparation and use of all advertising and publicity material and comply with his reasonable requests. It further provided that Fred Astaire would accept election of, and act as chairman of the board of directors of the corporation.
It appears that a dance studio knoxvn as the ‘ ‘ Fred Astaire Dance Studio ”, has been located at 16 Bast Tupper Street, *805 Buffalo, New York, for more than 10 years. Two large signs with that name are on the exterior of the building. “ Western New York Dance Studios ” does not appear in the phone book, but “ Fred Astaire Dance Studios ”, does. A quarter page ad in the classified section contains a picture of Fred Astaire and below it the following words:
‘1 DANCING IS MORE PUN WHEN YOU REALLY KNOW HOW
‘1 Thousands of men and women have followed Fred Astaire’s exclusive secrets. The ‘ Hows ’ and ‘ How-Nots ’ of all the latest dances. Far more important than the popular dance steps is Astaire’s graceful, relaxed, debonair style. You, too, may have natural talent which needs only proper training to work wonders for you. Learn all the popular dances correctly, easily and quickly.
“ Combination Group and Individual Lessons are offered exclusively at Fred Astaire’s and Tuition is reasonable. Learn Astaire’s easy swing-rhythm from accomplished instructors trained to teach you a system devised personally by Fred Astaire himself.
‘ ‘ Call now for a Complimentary Trial Lesson. Studios open to 10 p.m. weekdays and 6 p.m. Sats.
Fred Astaire (Signature)
Dance Studios
16 E. Tupper 853-1827 ”
‘ ‘ Fred Astaire Dance Studio ’ ’ is advertised extensively in the Buffalo newspapers, but no mention is made in the ads of “ Western New York Dance Studios, Inc.” All of plaintiff’s checks were made payable to “ Fred Astaire Studio ”, or “ Fred Astaire Dance Studio ”. Exhibit No. 11, submitted by the plaintiff is most interesting. It is one of the courses sold at Fred Astaire Dance Studio, called the ‘ ‘ Bronze Course Plan ’ ’. On the front page there is a large picture of Fred Astaire and below it, the following words: ‘ Some people seem to feel good dancers are born. But all the good dancers I have known are taught or trained. To me, dancing has always been fun, I enjoy every minute of it. I am glad that I can now put my knowledge to use in bringing personal confidence and a feeling of achievement to so many people.
pred astaire (Signature) ’ ”
A more complete identification of a business with a person would be hard to conceive. The immediate impression gained by the ordinary person is that Fred Astaire operates a dance *806 studio in Buffalo, known as Fred Astaire Dance Studio. Nothing is done to dispel this notion and on the contrary, great effort made to give it.
We shall now consider the application of CPLR 302 to the foregoing set of facts. At the outset, I believe we can eliminate subdivision 3, as I fail to find any substantial basis for a claim that a tortious act was committed without the State. Also as far as personal conduct by Fred Astaire is concerned, I believe we can eliminate subdivisions 1 and 2, as there is no proof that Fred Astaire actually came into the State, and subdivision 4, as there is no proof that he owns, uses or possesses any real property situate within the State. This leaves for consideration, the question whether Fred Astaire through an agent transacted any business within the State, committed a tortious act within the State, or owns, uses or possesses any real property situated within the State.
There is no question that a dance studio, commonly known as “Fred Astaire Dance Studio ”, does transact business in the State and does own, use or possess real property in the State, and the complaint does set forth a cause of action for a tortious act committed within the State. Naturally, if such studio is the agent of Fred Astaire, he is subject to the jurisdiction of the State of New York.
While Fred Astaire has not physically come into the State, he has projected himself into the State. It is well settled that an agency may arise by estoppel when a person represents that another is acting on his behalf. (Hannon v. Siegel-Cooper Co., 167 N. Y. 244; Santise v. Martins, Inc., 258 App. Div. 663.) The impression given to the public is that “ Fred Astaire Dance Studio ” is the alter ego of Fred Astaire. Fred Astaire through his control over advertising could have prevented such an impression being given. The only inference to be drawn from his failure to do so, is that he approved of such advertising, and the effect thereof. I believe that for the purposes of this motion, he cannot successfully deny that 1 ‘ Fred Astaire Dance Studio ’ ’ is his agent. While the ultimate responsibility for the acts allegedly committed by the defendants must await a trial, I hold that Fred Astaire is subject under CPLR 302 to the jurisdiction of the State of New York, and should be required to defend the action brought against him in this State. The defendant’s motion to dismiss the complaint is denied.