Jerome N. DOUMAUX et al.,

v.

Daniel Sexton GURNEY et al.

No. 71 C 688.

United States District Court,
E. D. New York.

Sept. 25, 1973.

Harvey A. Eysman, New York City, for plaintiffs Doumaux and Praesepe Corp.

Nagel, Regan & Davidson, Santa Ana, Cal., by Peter D. Kolbrener, Mineola, N. Y., for defendants Gurney and All American Racers, Inc.

## MEMORANDUM AND ORDER

COSTANTINO, District Judge.

Defendants Daniel Sexton Gurney, a domiciliary of the State of California, and All American Racers, Inc. [hereinafter referred to as All American], a California corporation, move to dismiss this action for fraud on the ground that the court has not acquired personal jurisdiction. The motion is granted as to defendant All American and denied as to defendant Gurney.

Plaintiffs Jerome N. Doumaux and Praesepe Corporation, both domiciliaries of New York, were engaged in the business of selling automotive parts and services, maintaining a premises at

Huntington, New York. In 1970 the plaintiffs contracted for the purchase of a franchise from Dan Gurney's Checkpoint America, Inc. [hereinafter referred to as Checkpoint], a Florida corporation. The complaint alleges that Checkpoint neglected, failed and refused to meet its obligations under the franchise agreement, and that Checkpoint had made fraudulent misrepresentations and promises to induce plaintiffs to purchase the franchise. More importantly,[1] it is alleged that Gurney had fraudulently misrepresented that he was a moving force behind Checkpoint, a fact which was relied upon and which the plaintiffs claim weighed heavily in their decision to purchase the franchise.

As a result of extensive discovery proceedings and preliminary hearings conducted by the late Judge Rosling, there now exists a sufficient factual exposition for the court to make a ruling on this motion.[2] The facts in this case are uncomplicated and generally not in dispute. Gurney is a famous race car driver. In recent years he has received acclaim both as a driver and designer of racing cars. He is well known among racing fans and has appeared in several television commercials. In May of 1969 Gurney entered into an agreement with Checkpoint whereby that company was granted the exclusive worldwide license and authority to use Gurney's name. The agreement authorized Checkpoint to include Gurney's name in its corporate name or that of any subsidiary; to have the free use and privilege of Gurney's name, his signature, his endorsement and to reproduce his photograph for all forms of advertising, publicity and other public relations efforts and advertising campaigns; to send out sales and promotional literature and advertisements under the name of "Dan Gurney" and to use a Florida or California address or other address to receive any and all mail in response to any advertisements. In addition, Gurney became obligated under the agreement to cooperate in the promotion of Checkpoint by making personal appearances on its behalf. Finally, the agreement required that Gurney receive for his approval prior to its release all advertising and promotional campaigns involving his name, photograph, signature or other identification.

Shortly after the execution of the licensing agreement, Checkpoint ran several advertisements in automotive trade journals. In one advertisement showing a picture of Gurney driving one of his racing cars, it was stated in bold type "DAN GURNEY GOES AFTER THE 7 MILLION DOLLAR AUTOMOTIVE PERFORMANCE MARKET." In another part of the advertisement it was stated: "You Can Join Him, From Dan Gurney's 18,000 sq. ft. advanced design and research center, ALL AMERICAN RACERS, INC., comes a revolutionary concept in automotive performance servicenters for the huge Foreign Sports Car and American Personal Car Market." At the right hand bottom corner of that same advertisement appeared the following: "Principals Only, Write for Complete Details to: Dan Gurney, Dan Gurney's Checkpoint America, Inc., 3101 N. Federal Highway, Ft. Lauderdale, Florida 33306." In another advertisement headed "WHAT YOUR DAN GURNEY'S CHECKPOINT AMERICA FRANCHISE PACKAGE INCLUDES," there appeared a long list of the equipment and services that franchisees would be given.

There is no evidence that either Gurney or All American aided in the placement of the advertisements or that either of them participated in the negotiation of plaintiffs' franchise agreement. However, there is evidence that the above advertisements appeared for a period of approximately one year, and that

---

1. At present the plaintiffs' efforts to serve process upon Checkpoint have failed. There is a good possibility that Checkpoint may never be served and thus will not be a party to this action.

2. Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583, 589 (2d Cir. 1965). In their briefs all the parties have expressed their belief that no further proceedings are necessary.

some time during that period Gurney read them. There is also evidence that Gurney actually received advertising material from Checkpoint for his prior approval; that letters were sent to prospective franchisees in response to their inquiries, bearing the endorsement "Dan Gurney, Director," in which it was stated, *inter alia*, "I stand behind this offer with no reservations"; that Gurney was in fact elected a director of Checkpoint; that Gurney had appeared at the Florida offices of Checkpoint; and that he spoke to prospective franchisees there, received checks from them, and was photographed with them. Finally it is significant that the above activities coincided with Checkpoint's nationwide campaign to solicit the sale of franchises, and that franchises were established in Florida, Connecticut and New York.

■ In light of the evidence proffered there can be no question that despite Gurney's physical absence from New York, Checkpoint's activities coupled with Gurney's close association with that company prima facie establish a sufficient basis to bring Gurney within the reach of New York's "long arm" statute, N.Y.C.P.L.R. § 302 (McKinney's Consol.Laws, c. 8, 1972), [hereinafter referred to as section 302], Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y. 2d 13, 308 N.Y.2d 337, 256 N.E.2d 506 (1970), and therefore a trial on the merits is required. Fed.R.Civ.P. 4(e); United States v. Montreal Trust Co., 358 F.2d 239 (2d Cir. 1966). The dearth of evidence against All American, however, warrants a different result. Accordingly, service upon All American is vacated and set aside, without prejudice to the service of process upon it in the State of New York, or elsewhere in conformity with law, other than under the circumstances and in the manner provided in section 302.[3]

Plaintiff's cause of action is predicated upon the commission of a tortious act —fraud—outside New York which has caused injury within New York. The relevant provision—subparagraph 3 of subdivision (a) of section 302—provides a basis for jurisdiction over any person who in person or through an agent:

> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> > (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> >
> > (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. . . .

Unquestionably Checkpoint's alleged course of conduct and plaintiffs' resulting injury, the financial failure of its franchise and the attendant losses therefrom, brings this case within the ambit of section 302(a)3(ii). Checkpoint's national sales campaign and the establishment of franchises throughout the country evidence that it derived substantially all of its revenue from interstate commerce. Gillmore v. J. S. Inskip, Inc., 54 Misc.2d 218, 282 N.Y.S.2d 127 (Sup. Ct. 1967) (Meyer, J.); *see also* Gonzales v. Harris Calorific Co., 64 Misc.2d 287, 315 N.Y.S.2d 51 (Sup.Ct.1970). Furthermore, the breadth of the alleged fraud and the circumstances under which it was committed, support a finding that the tort was committed outside of New York,[4] and that Checkpoint should have reasonably expected its acts to have adverse consequences within New York.

---

3. *See* Grammenos v. Lemos, 457 F.2d 1067 (2d Cir., decided February 23, 1972).

4. There is no issue as to where the tort was committed. Even if it is assumed that the

fraud was committed within New York, Checkpoint would still come within the reach of section 302.

**1212**

*See* Naples v. City of New York, 34 A. D.2d 577, 309 N.Y.S.2d 663 (2d Dep't 1970). Finally, it cannot be denied that Checkpoint's conduct caused injury within New York. Spectacular Promotions, Inc. v. Radio Station Wing, 272 F.Supp. 734 (E.D.N.Y.1967) (Weinstein, J.); *see* Car-Freshner Corp. v. Broadway Manufacturing Co., 337 F.Supp. 618 (S. D.N.Y.1971); Wilcox v. Pennsylvania R. R. Co., 269 F.Supp. 326 (S.D.N.Y.1967).

■ The evidence showing Gurney's almost complete identification with Checkpoint, his right to control the promotion of his name, and the expected economic gain he was to receive adequately establish that Checkpoint was his agent for the purpose of exploiting the commercial value of his name. Lodge v. Western New York Dance Studios, Inc., 53 Misc.2d 803, 279 N.Y.S.2d 756 (Sup.Ct.1967); aff'd 29 A.D.2d 734, 286 N.Y.S.2d 632 (4th Dep't 1968); Hodom v. Stearns, 32 A.D.2d 234, 301 N.Y. S.2d 146 (4th Dep't 1969). In light of the evidence presented against him, Gurney should not, for the purposes of this motion, be allowed to deny that Checkpoint was his agent. Accordingly, since section 302 properly provides a basis for jurisdiction over any person who indirectly projects himself into New York through the office of an agent, and since the court is satisfied that the agency has been adequately established and that the agent's contacts with New York are a sufficient basis for the assertion of "long arm" jurisdiction, it is compelled to conclude that Gurney comes within the reach of section 302. Scanapico v. Richmond, Fredericksburg & Potomac R. R. Co., 439 F.2d 17 (2d Cir. 1970); Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d 116 (2d Cir. 1967); Delagi v. Volkswagenwerk AG of Wolfsburg, 29 N.Y.2d 426, 328 N.Y.S.2d 653, 278 N.E. 2d 895 (1972); Frummer v. Hilton Hotels Int'l, Inc., 19 N.Y.2d 533, 281 N.Y. S.2d 41, 227 N.E.2d 851 (1967). Consequently, defendant Gurney's motion to dismiss is denied.