**SOUTHWEST OFFSET, INC.,**
**Plaintiff-Appellant,**

v.

**HUDCO PUBLISHING CO., INC.,**
**Defendant-Appellee.**

**No. 79–3071**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

July 23, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Jack Hill, Dallas, Tex., for plaintiff-appellant.

Freytag, Marshall, Beneke, Laforce, Rubinstein & Stutzman, Stephen L. Hubbard, Karl L. Rubinstein, Dallas Tex., for defendant-appellee.

Before GEE, HENDERSON and HATCHETT, Circuit Judges.

**PER CURIAM:**

Southwest Offset, Inc. ("Southwest"), a Texas contract printer, appeals the dismissal for want of jurisdiction of its diversity suit on a series of contracts [1] against Hudco Publishing Company, Inc. ("Hudco"), an Alabama publisher of suburban telephone directories operating in Alabama and Mississippi only.

After we remanded for clarification of its findings of fact, the district court found, among other things, that Southwest, a Texas corporation, solicited Hudco's business through Southwest's sales representative in Alabama. After the initial order was placed with the sales representative, Hudco placed subsequent orders, approximately eight,[2] either in writing or over the phone. No one associated with Hudco ever came to Texas in connection with the orders placed with Southwest. Payment for the orders was to be made at Southwest's office in Dallas, Texas, and Hudco did mail some payments for these orders to Dallas. As a necessary part of Southwest's printing process, Hudco mailed to Southwest's office camera-ready copy of the telephone directories. Southwest, after preparing printing plates from the camera-ready copy, would print proofs and send them to Hudco for corrections. After Hudco examined the proofs, it would return corrected proofs to Southwest. The books would then be printed and shipped to Hudco F.O.B. Dallas. All the directories that are the subject matter of this suit were printed in Texas, and Hudco knew from the outset that Southwest's only printing plant was located in Texas.

On the basis of the above facts, the court below concluded that personal jurisdiction was lacking over defendant, although the literal provisions of Texas' long-arm statute, Tex.Rev.Civ.Stat.Ann. art. 2031b, were satisfied.[3] The trial court held:

1. *See* note 2, *infra.*

2. In our remand order, we indicated that we were unable to determine from the trial court's findings whether the suit involved one omnibus agreement or a series of contracts. The trial court on remand used the term "contracts" several times and made no finding regarding any overall agreement calling for several print-ing jobs. Thus, we will treat each printing order as a separate contract.

3. Art. 2031b reads, in pertinent part:

Sec. 4. For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation,

It would not be fair and reasonable to require the Defendant to come into Texas and defend this action considering the lack of purposeful activity by Defendant in Texas, the relative convenience of the parties (Defendant only doing business in two southeastern states balanced against the larger operations of Plaintiff which is soliciting orders throughout the United States), and the lack of minimum contacts with Texas. Moreover, Defendant has not purposefully availed itself of the privilege of conducting activity in Texas, and thus has not invoked the benefits and protections of its laws.

In so holding, the trial court rejected the applicability of *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974), and considered *U-Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760 (Tex.1977), to be controlling. We disagree and reverse.

■ As an initial matter, we reaffirm the principle that, in the determination of whether a foreign corporation should be required to defend itself in a suit in Texas arising out of a contract between it and a Texas corporation, each case must be decided on its own facts. *See Product Promotions, Inc. v. Cousteau*, 495 F.2d at 499; *see also Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). Nonetheless, guiding principles may be found in the facts of other cases. In *Cousteau*, for example, a foreign corporation (CEMA) entered into a contract with a Texas corporation to test a device designed to attract fish. The contract was held to have been made in Texas, *see* 495 F.2d at 495, and under its terms, CEMA was to test the device and prepare a report and a film for television

and other advertising promotions. The film and reports were sent to Dallas, and although CEMA had performed no physical act within the state,[4] its activities in sending the report and film to Texas were adequate to support an inference of an "affirmative, purposeful decision . . . to avail itself of the privilege of conducting some business in Texas." *Id.* at 496.

By contrast, the parties in *U-Anchor Advertising, Inc. v. Burt, supra*, entered into a single written contract in Oklahoma, the contract having been solicited by a salesman in Oklahoma for U-Anchor. Defendant Burt agreed to pay U-Anchor $80 a month at its office in Amarillo, Texas, and U-Anchor constructed the signs in Amarillo and erected them in Oklahoma. Aside from mailing monthly payment checks to U-Anchor in Amarillo, Burt had no other contact with Texas. The Texas Supreme Court held that

> Burt's contacts with Texas were not grounded on any expectation or necessity of invoking the benefits and protections of Texas law, nor were they designed to result in profit from a business transaction undertaken in Texas. . . . Simply stated, Burt was a passive customer of a Texas corporation who neither sought, initiated, nor profited from his single and fortuitous contact with Texas.

553 S.W.2d at 763. Since Burt's *only* Texas activity consisted of the preparation of and mailing of checks from his place of business in Oklahoma to Amarillo, the court found that the exercise of in personam jurisdiction over him would be offensive to due process.

■ We find the case at bar to be controlled by *Cousteau*, not by *U-Anchor*, for

joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State.

The Texas courts construe this provision as reaching "as far as the federal constitutional requirements of due process will permit." *U-Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977). Since we agree with the

trial court's holding that the Texas statutory requirements are met, we must proceed to inquire into whether the exercise of in personam jurisdiction over Hudco by a Texas federal court sitting in diversity satisfies the requirements of the due process clause of the United States Constitution. *See Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 489 (5th Cir. 1974).

**4.** Indeed, the testing of the fish call was carried out halfway around the globe, off the coasts of France and Monaco. *Id.* at 488.

several reasons. First, Texas is probably the place of most of the contracts, since all except the first of Hudco's offers to print were accepted by Southwest in Texas. *See Cousteau,* 495 F.2d at 495. This court has already held, in its remand order in this case, that the contracts are governed by Texas law. *See also id.* at n.20. While Burt might have expected that the contract he signed in Oklahoma with U-Anchor might be enforced according to Oklahoma law, *see* 553 S.W.2d at 763, Hudco, like the defendant in *Cousteau,* could expect that Texas law might govern the enforcement of their contracts, since a substantial part of the expected performance would occur in Texas.

Second, Hudco, unlike Burt, was no mere passive customer of a Texas corporation. Hudco repeatedly placed orders with the Texas corporation for the "manufacture" of telephone directories, from which Hudco expected to profit, and Hudco several times mailed camera-ready copy and proofs to Texas in order to facilitate the manufacturing process. Thus, Hudco did considerably more than Burt, whose "single and fortuitous," 553 S.W.2d at 763, Texas contact consisted of mailing payments to an office in Amarillo. Rather, Hudco more resembles defendant CEMA in *Cousteau,* who was required to send certain items to Texas under the contract. Hudco does not argue that Southwest could have manufactured its product without the camera-ready copy. Thus, the sending of the copy to Texas was a necessary part of Hudco's contract performance.

■ Third, even if we were to assume arguendo that the facts of this case were closer to those found in *U-Anchor,* we would not be bound by that court's holding on lack of minimum contacts. This is so because the Texas Supreme Court's holding

in *U-Anchor* was predicated on the due process clause of the United States Constitution, and the federal courts are not bound by state court determinations of what the Constitution requires.[5] We are, however, bound by the precedent of our own holding in *Cousteau.*

■ Finally, the district court's holding that "it would be more burdensome for Defendant to come to Texas than for Plaintiff who solicited the contract in Alabama to go to Alabama and bring suit" is not supported by the evidence. We note that our decisions establish a two-pronged standard for determining whether constitutional due process requirements have been met. Defendant must have some minimum contacts with the state resulting from an affirmative act or acts on its part, and it must not be unfair or unreasonable to require the nonresident defendant to defend the suit in the forum. *See Cousteau,* 495 F.2d at 494, 497–98. The second prong, or "fairness" factor, requires the court to consider, among other things, the interest of the state in providing a forum for the suit, the relative conveniences and inconveniences to the parties, and the basic equities. *Id.* at 498. Southwest, as the party seeking to invoke the jurisdiction of the federal court, had the burden of establishing the district court's jurisdiction over Hudco, *id.* at 490, and we believe that Southwest has carried that burden. It has proved that the contracts were made in Texas and would be governed by Texas law and thus that Texas has an interest in providing a forum for this suit. *See id.* at 498 and n.27. Notwithstanding the trial court's holding, it would be just as inconvenient for Southwest to litigate in Alabama as it would be for Hudco to litigate in Texas. The fact that Southwest maintained a sales force in Alabama tells us nothing about its ability to

5. We realize that if the trial court is correct in its implicit holding that a Texas state court would not exercise in personam jurisdiction over Hudco, on the authority of *U-Anchor,* this case will have a different result than if filed in state court. But *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny have not removed from the shoulders of federal judges the onus of authoritatively interpreting our federal Constitution when that document's meaning must be found. This and like ironies, *see, e. g., Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), are unavoidable consequences of our dual court system.

prosecute a suit there. Thus, the convenience factor is a "stand-off." *See id.* at 498. And, as in *Cousteau,* Hudco has pointed to no particular inequity that would result if a court in Texas exercises jurisdiction over its person in this suit.[6]

Indeed, there seems to be more purposeful activity in Texas by Hudco than by CEMA, a French corporation over which this court in *Cousteau* approved the exercise of in personam jurisdiction in Texas. In light of the facts and our precedent, we could hardly hold that it would be unfair or unreasonable to require Hudco to defend against this suit in a Texas court.

REVERSED and REMANDED.

---

**6.** *See id.* This language in *Cousteau* appears to place the burden of proving the relative equities at least partially on defendant, despite the court's earlier holding placing the burden of proving jurisdiction on plaintiff. This appears a fair allocation, since defendant would have unique knowledge of any particular hardships making it inequitable for it to defend in a foreign forum.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.