The PEPSI–COLA BOTTLING COMPA-
NY OF FT. LAUDERDALE–PALM
BEACH, INC., Plaintiff,

v.

BUFFALO ROCK COMPANY, INC., and
Desnoes & Geddes, Ltd., Defendants.

Civ. A. No. CV82–L–2412–S.

United States District Court,
N.D. Alabama, S.D.

Oct. 1, 1984.

John H. Morrow, Bradley, Arant, Rose & White, Birmingham, Ala., G. Jack Donson, Taft, Stettinius & Hollister, Cincinnati, Ohio, for plaintiff.

Clifford M. Spencer, Jr., Pritchard, McCall, Jones, Spencer & O'Kelley, John B. Tally, Jr., Robert D. Eckinger, Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for defendants.

## MEMORANDUM OF OPINION *

LYNNE, Senior District Judge.

Submitted upon the motion to dismiss filed in this action by the defendant Desnoes & Geddes, Ltd., the Court is required to decide whether Desnoes & Geddes' contacts with the State of Alabama are sufficient to render that defendant subject to its *in personam* jurisdiction. Because the Court is satisfied that the affidavits and discovery materials thus far adduced make out a prima facie showing of sufficient contacts, the Court will overrule such motion.

· ▋ By its motion, Desnoes & Geddes, Ltd. ("Desnoes & Geddes") contends that this court lacks personal jurisdiction over it. Once a nonresident defendant challenges personal jurisdiction in this manner, the burden is on the plaintiff to make a prima facie showing that jurisdiction exists. *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483 (5th Cir.1974). Since Alabama's long-arm provision, A.R.Civ.P. 4.2(a)(2), authorizes the assertion of personal jurisdiction to the limits of due process,

*Alabama Power Co. v. VSL Corp.,* 448 So.2d 327, 328 (Ala.1984), the plaintiff need only bring forward prima facie evidence of "minimum contacts" between the nonresident defendant and the forum demonstrating that maintenance of the suit in this Court would not offend the "traditional notions of fair play and substantial justice" embodied in the Due Process Clause of the Fourteenth Amendment. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). If a prima facie showing of such jurisdictional facts can be adduced from the discovery materials and affidavits filed with the court thus far, the plaintiff's burden is met, even though other portions of the affidavits and discovery materials may tend to contradict or rebut the prima facie showing. *Wyatt v. Kaplan,* 686 F.2d 276 (5th Cir.1982), *rehearing denied* 712 F.2d 1002 (5th Cir.1983). *See also American Steel, Inc. v. Cascade Rolling Mills,* 425 F.Supp. 301 (S.D.Tex.1975), *aff'd per curiam* 548 F.2d 620 (5th Cir.1977); *Dangerfield v. Bachman Foods, Inc.,* 515 F.Supp. 1383, 1385 (D.N.D.1981).

## BACKGROUND

In the case sub judice, the jurisdictional issue does involve a tangled web of factual disputes. In some respects, the question of personal jurisdiction is inextricably intertwined with the merits of the case and the parties' conflicting characterizations of the transaction at issue.

Certain facts are undisputed, however. Each of the parties to this action is engaged in the manufacturing, bottling, distribution and sale of Pepsi-Cola, pursuant to separate agreements with Pepsi-Co, Inc. ("Pepsi-Co"), the well known soft drink company which is incorporated in Delaware and headquartered in New York. Through its Pepsi-Cola Company division, Pepsi-Co., Inc., manufactures syrups and concentrates which it sells to bottlers such as the defendants, who then process the syrups

---

* The basis of this opinion is the sensitive memorandum prepared for the Court by Michael R. Pennington, Law Clerk.

and concentrates to produce those soft drink products sold to consumers under various trademarks, including "Pepsi", "Pepsi-Cola", and "Diet Pepsi Cola".

In order to achieve effective distribution of its products, Pepsi-Co has entered into exclusive bottling appointments with numerous bottlers located throughout the United States and abroad. Under the terms of its standard form exclusive bottling appointment, Pepsi-Co. authorizes the bottler to purchase beverage concentrate, and to distribute the finished soft drink products within a defined geographic territory. However, in order to preserve the exclusive rights granted to its bottlers, Pepsi-Co's exclusive bottling appointments restrict each of its bottlers to manufacturing, distributing and selling only for ultimate resale to consumers within the territory assigned to that bottler. Sales or distribution in another bottler's territory are generally prohibited.[1]

This action was brought by the Pepsi-Cola Bottling Company of Ft. Lauderdale-Palm Beach, Inc. ("Ft. Lauderdale Pepsi"), which has exclusive rights to bottle, distribute and sell Pepsi-Cola in Ft. Lauderdale, Florida, and surrounding areas. Ft. Lauderdale Pepsi claims that defendant Desnoes & Geddes, the exclusive bottler of Pepsi-Cola in Jamaica and the Cayman Islands, collaborated with defendant Buffalo Rock Co. ("Buffalo Rock"), the exclusive bottler of Pepsi-Cola in the Birmingham and Mobile, Alabama, areas, to violate the territorial restrictions of their respective bottling agreements with Pepsi-Co. The alleged violations occurred when Desnoes & Geddes issued purchase orders to Buffalo Rock for some 230,000 cases of canned Pepsi-Cola for delivery to third parties—a group known as Handel International, Ltd.[2] After this transaction took place, the 230,000 cases of canned Pepsi-Cola were allegedly shipped to retailers outside the defendants' respective territories. Ft. Lauderdale Pepsi claims that the 230,000 cases eventually wound up in the hands of Pueblo International, Inc. ("Pueblo"), a wholesale grocery chain with stores in Florida and elsewhere. Ft. Lauderdale Pepsi claims that at least 50,000 cases purchased by Desnoes & Geddes from Buffalo Rock were eventually delivered to a Pueblo store in the Ft. Lauderdale area. The plaintiff, as a third party beneficiary of the defendants' contracts with Pepsi-Co, each of which apparently contains a territorial restriction along the lines mentioned above, therefore seeks compensatory and punitive damages from the defendants. The plaintiff claims that Desnoes & Geddes, Buffalo Rock, Pueblo, an individual named James Box[3] and others (presumably including Handel International), conspired to violate the territorial restrictions and to tortiously interfere with Ft. Lauderdale Pepsi's relationship with accounts located in its territory. The plaintiff also claims that Desnoes & Geddes and Buffalo Rock breached their respective contracts with Pepsi-Co and negligently allowed the products involved to be distributed in violation of the territorial restrictions. It is against this background that the jurisdictional issue must be evaluated.

## THE JURISDICTIONAL ISSUE

It is uncontroverted that Desnoes & Geddes maintains no office, warehouse, or place of business in Alabama. Indeed, the Jamaican company appears to have no contacts at all with this State other than those giving rise to this controversy. Certainly there do not appear to be those contacts of a "continuous and systematic" nature that would give this Court jurisdiction

---

1. Defendant Buffalo Rock has asserted in its answer, however, that Pepsi Co. does permit a licensed bottler to sell Pepsi-Cola *to another licensed Pepsi-Cola bottler* in the latter's territory.

2. Handel International, Ltd. ("Handel" or "Handel International"), is an import business located in Georgetown, Grand Cayman. Its principals are Peter Delisser and John Hannah.

3. Box is a self-described "transshipper of soft drinks" (Box Deposition at 6). He sometimes operates under the alias "Al Hacker." (Box Deposition at 10–11). He and an associate, David Mitchell, played a significant role in arranging and finalizing this transaction.

over the defendant for all purposes, especially with regard to litigation wholly unrelated to the defendant's contacts with the forum. *See Helicopteros Nacionales de Colombia v. Hall,* —— U.S. ——, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The critical question, then, is whether the nonresident defendant's contacts with Alabama *in connection with the transaction at issue* are sufficient to give the Court *in personam* jurisdiction over the company *for purposes of this particular litigation.* In other words, the Court deals with a question of *specific jurisdiction* rather than *general jurisdiction.* [4] In these circumstances jurisdiction will be proper if the "relationship among the defendant, the forum, and the litigation" is such that defendant could reasonably have anticipated being haled into court there should his forum-related activities result in litigation. *See Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Here, there are indeed sufficient contacts to warrant this Court's assertion of personal jurisdiction over the Jamaican defendant with regard to this particular litigation. It is conceded that Desnoes & Geddes issued purchase orders to an Alabama bottler for over 230,000 cases of Pepsi-Cola, knowing that the product would be processed and produced in Alabama. Moreover, the purchase orders issued by

Desnoes & Geddes, two of which were mailed to Alabama by Desnoes & Geddes and accepted by Buffalo Rock in this State,[5] admittedly contemplated delivery f.o.b. Buffalo Rock's Alabama plants. (Deposition of Paul H. Geddes at 142, and Exhibit 7 thereto). While the delivery was to be made to a third party—Handel International—this was to be done at the express direction of Desnoes & Geddes, whose purchase orders specifically required delivery to the order of Handel International or its accredited agent. (Geddes' Deposition, Exhibit 7). This is especially significant for purposes of personal jurisdiction in this case, since one of the plaintiff's prime contentions is that Desnoes & Geddes purchased this very large quantity of Pepsi-Cola from Buffalo Rock with knowledge of its obligation to prevent ultimate resale outside its own territory, and thereafter negligently relinquished control of the product and its destination to third parties. It is manifest that the allegedly negligent relinquishment of the product to Handel occurred in Alabama at Buffalo Rock's plants, pursuant to the express direction of Desnoes & Geddes.

By its own affirmative and deliberate action, then, Desnoes & Geddes helped to ensure that all significant aspects of the performance of its purchase and sale contract with Buffalo Rock would occur in Alabama.[6] It cannot be denied that the Jamaican buyer knowingly caused a sub-

---

**4.** When a state exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the state is said to be exercising "general jurisdiction" over the defendant. *See* von Mehren and Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1136–1144–64 (1966). General jurisdiction is available only where the defendant's contacts with the forum are "continuous and systematic." *See Helicopteros,* —— U.S. at ——, 104 S.Ct. at 1873, 80 L.Ed.2d at 411. However, even when the defendant's contacts with the forum are not "continuous and systematic," but limited and isolated, the state may exercise "specific jurisdiction" over the defendant in any suit arising out of or related to those contacts, so long as it would be consistent with "traditional notions of fair play and substantial justice" to do so. *See Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579,

53 L.Ed.2d 683 (1977). *See also Helicopteros,* —— U.S. at ——, n. 8, 104 S.Ct. at 1872 n. 8, 80 L.Ed.2d at 411, n. 8.

**5.** The first of the three purchase orders was delivered to Buffalo Rock representatives at a meeting with Mr. Paul H. Geddes, Vice President and Co-Managing Director of Desnoes & Geddes. This meeting occurred in Kingston, Jamaica on or about April 10, 1982. The other two purchase orders were mailed into Alabama a few days later.

**6.** Payment for the goods ordered by Desnoes & Geddes was also received by Buffalo Rock in Alabama in the form of cashier's checks delivered to Buffalo Rock's plants in Mobile and Birmingham. (Box Deposition at 145, 152–158; Wolfe Deposition at 181–84, 236–37. *See also* Geddes Deposition at 146).

stantial amount of business activity—including the production and delivery of a large quantity of goods—within the forum. It is quite clear that the Jamaican company's affiliation with the State of Alabama was purposeful, knowing and deliberate, and not merely fortuitous. *Cf. Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). For it was not the mere unilateral activity of third parties that brought about the defendant's contacts with the forum, but the evident intent of Desnoes & Geddes itself. *Compare World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Given the deliberate location of critical aspects of this transaction in Alabama, Desnoes & Geddes cannot reasonably claim surprise at the prospect of being haled into an Alabama court to answer for the consequences of that transaction.

This conclusion enjoys further support, however. Desnoes & Geddes was largely responsible for the fact that other aspects of this transaction took place in Alabama. Thus, although the preliminary negotiation of the parameters of the transaction occurred in Kingston, Jamaica,[7] it was Desnoes & Geddes' express intent that several key terms of the contract between itself and Buffalo Rock be negotiated and executed in Alabama. This is evidenced by the fact that Desnoes & Geddes' purchase orders, including the two that were mailed to Buffalo Rock in Alabama, were left blank as to price, shipping instructions, whether payment was to be made by cashier's check or by irrevocable letter of credit, and various other important elements of the transaction. Desnoes & Geddes admittedly intended that those terms of its contract with Buffalo Rock be further negotiated by representatives of Handel after Buffalo Rock received the purchase orders in Alabama. (Geddes Deposition at 137–147). Thus, the fact that Desnoes & Geddes' contract in its final form was created in Alabama is a contact fairly attributable to Desnoes & Geddes. It chose to be a party to this contract. By virtue of its control over the purchase orders, it had control over the place of contracting and the incidents of the contract, as well as control over how and where the contract would be negotiated.

Moreover, there is evidence in the record that two individuals who conducted extensive activities in Alabama in regard to this transaction—Jimmy Box and David Mitchell—acted under actual or apparent authority as agents of Desnoes & Geddes in negotiating the final terms of the contract and consummating this transaction. According to Jim Reddinger, Executive Vice President of Buffalo Rock, and Jimmy Wolfe, Vice President of Manufacturing and Operations for the Alabama bottler, Paul Geddes expressly informed them at the April 10 meeting in Jamaica that Box and Mitchell were his "agents" in this transaction; that they were "acting in his behalf"; that Buffalo Rock should "conduct [its] business through" them; that Box and Mitchell "would handle all the arrangements"; and that Buffalo Rock should conduct all of its dealings with Desnoes & Geddes "through Box, as agent." (Reddinger Deposition at 161–62, 178, 232; Wolfe Deposition at 130, 159).

In short, the record contains a prima facie showing that Box and Mitchell were acting as agents for Desnoes & Geddes in this transaction. *See Product Promotions,* 495 F.2d at 493 (both actual and apparent authority "depend for their creation on some manifestations, written or spoken words or conduct, by the principal, communicated either to the agent ... or to the third party ..."). *See also* 1 Restatement (Second) of Agency §§ 26, 27 (1958); *Lachman v. Bank of Louisiana in New Orleans,* 510 F.Supp. 753, 759–60 (N.D. Ohio 1981); *Lodge v. Western New York Dance Studios,* 53 Misc.2d 803, 279 N.Y. S.2d 756 (Sup.Ct.N.Y.1967), *aff'd* 29 A.D.2d 734, 286 N.Y.S.2d 632 (1968). This showing of agency is enhanced by the undisputed actions of Box and Mitchell in Alabama in

---

**7.** The Kingston, Jamaica, meeting occurred on or about April 10, 1982 (Geddes' Deposition at 119). Present at the meeting were Jimmy Wolfe and James Reddinger of Buffalo Rock, Paul H. Geddes of Desnoes & Geddes, and an individual named David Mitchell.

regard to Desnoes & Geddes' purchase contract. These two individuals came to Alabama on numerous occasions to negotiate and finalize the remaining terms of the contract,[8] inspect the product, verify delivery, and otherwise consummate the transaction set in motion by Desnoes & Geddes' purchase orders. (Geddes Deposition at 142–147; Reddinger Deposition at 205–206, 219–223, 231–32, 235, 239–40, 246; Box Deposition at 144–46, 159, 162; Wolfe Deposition at 159–61, 164–66, 211–15, 236–38). Mitchell even signed invoices *addressed to Desnoes & Geddes* to acknowledge receipt of the product, an act one would normally expect to be performed only by an agent.

By permitting these persons to negotiate the terms of its purchase orders and to perform, in Alabama, its obligations created by those purchase orders, all with the admitted intention of receiving pecuniary gain from the transaction they were to consummate,[9] Desnoes & Geddes purposefully availed itself of the benefits of activities conducted in Alabama in its behalf and pursuant to its intent. The activities of Box and Mitchell in Alabama were in no sense "unilateral." They were conducted with the knowledge, consent, and backing, if not the express authority, of the Jamaican bottler, which had ultimate control over the entire transaction by virtue of its control over the purchase orders and the manner in which they were issued and finalized. *Compare Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir.1981) (agency established for purposes of jurisdiction by a showing that putative agent acted in forum for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal). Moreover, the actions of Box and Mitchell were clearly in furtherance of the interests of Desnoes & Geddes to a real and substantial extent. Desnoes & Geddes was fully aware from the outset that it was entering a transaction intimately connected with Alabama, and that its interests in that transaction required a substantial number of activities within the State. Its resulting contacts can hardly be called fortuitous or unintended. *Compare Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239; *Worldwide Volkswagen*, 444 U.S. at 297–98, 100 S.Ct. at 567–68.

Desnoes & Geddes quite expectedly portrays the transaction at issue a bit differently than does the plaintiff. The Jamaican bottler claims that it was only the "middleman" in this transaction, which was primarily one between Buffalo Rock and Handel. The only reason Desnoes & Geddes became involved, according to Paul H. Geddes, was that Handel wanted to buy canned Pepsi for resale in the Cayman Islands, which was part of Desnoes & Geddes' exclusive territory. (*See* Geddes Deposition at 132–133). Desnoes & Geddes did not produce canned Pepsi, but Buffalo Rock did. However, the product could be purchased by Handel from Buffalo Rock only through Desnoes & Geddes. Thus, Desnoes & Geddes agreed to act as purchaser. The Jamaican defendant also claims that Box and Mitchell were agents of Handel, and not those of Desnoes & Geddes.

■ Of course, this portrayal contrasts sharply with that of the plaintiff. It is essentially a dispute as to the facts, and one which involves the merits of this case as well as the jurisdictional issue at hand.[10] Such factual conflicts in the affidavits and discovery materials are to be resolved in favor of the plaintiff for purposes of a motion to dismiss for lack of personal jurisdiction. *Wyatt v. Kaplan*, 686 F.2d 276 (5th Cir.1982); *Dangerfield v. Bachman Foods, Inc.*, 515 F.Supp. 1383, 1385 (D.N.D. 1981); *See also Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 491 (5th Cir.

---

**8.** Box and Mitchell also agreed to additional contract terms, including a provision that "Purchaser acknowledges that this transaction was consummated in Birmingham, Alabama" (Exhibit 46 to Buffalo Rock Depositions).

**9.** *See* Geddes Deposition at 148–49.

**10.** For instance, one of Buffalo Rock's principal defenses in this case is that it made the sale to Desnoes & Geddes, an authorized Pepsi-Cola bottler, and not to Handel. (*See* Answer of Buffalo Rock). The issue of agency also has ramifications on both the jurisdictional issue and the merits.

1974). This is particularly true when the factual issues and the merits of the case are, as here, inextricably intertwined. *Cf. McBeath v. InterAmerican Citizens for Decency Committee*, 374 F.2d 359, 363 (5th Cir.1967), *cert. denied* 389 U.S. 896, 88 S.Ct. 216, 19 L.Ed.2d 214 (1967) (error for district court to dismiss on jurisdictional ground prior to full trial).

However, even if the Court were to accept the Jamaican defendant's version of the transaction, the jurisdictional considerations would not be significantly affected. Regardless of Desnoes & Geddes' intent in entering the contract, and regardless of the ultimate destination of the goods, the truth of the matter is that Desnoes & Geddes chose to act as purchaser in this transaction. The fact remains that Desnoes & Geddes issued the purchase orders in question; mailed two of them into Alabama for finalization, modification, execution and acceptance there; directed Buffalo Rock to deliver the goods ordered by Desnoes & Geddes to third parties in Alabama; and knowingly permitted third parties to act as its negotiators with respect to its contract with Buffalo Rock.

Nor were these contacts with Alabama passive or benign on the part of Desnoes & Geddes, even accepting the claim that it was only a "middleman" in the transaction. By its own admission, the Jamaican bottler entered into this transaction for pecuniary gain. It stood to derive in excess of $15,-000 [11] as a direct result of entering into this contract, issuing its purchase orders, and arranging for delivery of the goods to Handel. (Geddes Deposition at 148–49).

Clearly, then, Desnoes & Geddes invoked the benefits and protections of Alabama law when it issued its purchase orders and participated monetarily in the production and sale of goods in Alabama, pursuant to a contract that had a very substantial connection with this State in both its performance and its creation. A nonresident's purposeful affiliation with a state for purposes of pecuniary gain has long been deemed a sufficient contact to render the nonresident subject to suit in the courts of that state in litigation related to that business transaction, even if the nonresident has no physical presence in the state whatsoever. *See, e.g., McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Nor can a foreign corporation escape the jurisdiction of a state simply because the business activities conducted there, though clearly contemplated by the corporate defendant and redounding to its financial benefit, were conducted through "intermediaries" of one kind or another. *Cf. Gray v. American Radiator and Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961). Purposeful affiliation with the forum is the key prerequisite to jurisdiction, and that prerequisite is clearly satisfied where, as here, the nonresident defendant has deliberately utilized the forum as the source of supply and the locus of contracting and delivery in a transaction designed to reap the defendant substantial monetary rewards. *Compare World-Wide Volkswagen*, 444 U.S. at 297–298, 100 S.Ct. at 567–568. In such circumstances, "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567. "Particularly in the commercial context, fairness dictates that a defendant who derives profits from deliberate contacts within the forum state should be responsible for the costs such activities incur." *Burger King Corp. v. MacShara*, 724 F.2d 1505, 1509 (11th Cir.1984), *rehearing denied* 729 F.2d 1468 (11th Cir.1984).

The assertion of jurisdiction over nonresident corporations which contract for the purchase of goods or services from a resident of the forum state is hardly a novel proposition. Indeed, jurisdiction has been found to exist over nonresident purchasers in factual settings quite similar to the present one. Thus, in *Southwest Offset, Inc. v. Hudco Publishing Co.*, 622 F.2d 149 (5th Cir.1980), a Texas contract printer brought suit in Texas against an Alabama

---

**11.** Paul Geddes testified that his firm was to receive 7 cents per case for its role in procuring the goods and acting as purchaser. (Geddes' Deposition at 148–49).

publishing company which had purchased printing services from the plaintiff. Although the nonresident purchaser had not initiated the contact with Texas and had no physical presence in the forum, jurisdiction over the defendant was upheld. The Court reasoned that Texas was the place of the contracts, because, as here, the defendant's orders were accepted in the forum. Moreover, since a substantial part of the expected performance was to occur in Texas, the defendant could expect Texas law to govern certain aspects of the transaction. Also important was the fact that defendant entered the transaction for pecuniary gain. All of these factors led the Court to the conclusion that the defendant had sufficient "contacts with the state resulting from an affirmative act or acts on its part" such that it would "not be unfair or unreasonable to require the nonresident defendant to defend the suit in the forum." 622 F.2d at 152. The factors mandating the result in *Hudco* are also present here.

The Eleventh Circuit recently reaffirmed the principles of *Hudco* and summarized the law of this Circuit:

> Where commercial parties of comparable bargaining strength contract for performance of manufacturing or services within the state's bounds, we have consistently held that jurisdiction comports with due process, even if negotiations occur elsewhere.

*Burger King Corp. v. MacShara*, 724 F.2d 1505, 1511 (11th Cir.1984). *Burger King* clearly validates the exercise of jurisdiction on the facts of the instant case.

Other cases are also in point. In *Pedi-Bares, Inc. v. P & C Food Markets*, 567 F.2d 933 (10th Cir.1977), personal jurisdiction was upheld on facts remarkably similar to the case at hand. In that case, a New York corporation issued purchase orders to a Kansas seller for a large quantity of goods. The purchase orders were accepted in Kansas, and the goods were manufactured in and shipped from that state. In addition, partial payment was made to the seller in Kansas. The court found that the buyer had purposefully availed itself of the privilege of carrying on activities to secure goods from the seller, thus subjecting itself to the jurisdiction of the courts of the seller's forum.

Similarly, in *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003 (5th Cir.1982), the Court held that "when a nonresident defendant takes purposeful and affirmative action, the effect of which is to cause business activity, foreseeable by the defendant, in the forum state, such action by the defendant is considered a 'minimum contact' for jurisdictional purposes," such that "maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice." 681 F.2d at 1007, *quoting Marathon Metallic Building Co. v. Mountain Empire Construction Co.*, 653 F.2d 921, 923 (5th Cir. 1981), and *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268 (5th Cir.1981). This is so because the nonresident defendant, by contracting with [the resident seller], "is considered to have purposefully availed itself of the privilege of conducting activities within the forum if it was reasonably foreseeable that [the resident seller] would in fact perform a material part of its contractual obligations within the forum state." 681 F.2d at 1008. The court went on to emphasize that this rule applied fully in "cases in which the nonresident defendant is on the 'receiving end' of the contractual transaction." 681 F.2d at 1007, n. 2. Similar precedents abound. *See, e.g., Biltmoor Moving & Storage Co. v. Shell Oil Co.*, 606 F.2d 202 (7th Cir.1979); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir.1974); *Alchemie International Inc. v. Metal World, Inc.*, 523 F.Supp. 1039 (D.C. N.J.1981).[12]

---

**12.** Although Desnoes & Geddes points to the Supreme Court's recent decision in the *Helicopteros* case in support of its motion, that decision does not contradict the prevailing law of this circuit as enunciated in *Hudco* and *McShara, supra.* While the Supreme Court in *Helicopteros* did hold that occasional purchases from forum residents would not justify a forum

court's assertion of *general* jurisdiction over the nonresident purchaser in cases unrelated to the transactions, the Court explicitly refused to hold that such purchases would be insufficient contacts to warrant the exercise of *specific* jurisdiction in cases arising out of or related to the purchases. *Helicopteros,* — U.S. at —, n. 12,

## CONCLUSION

This Court is convinced, therefore, that Desnoes & Geddes has sufficient contacts with the State of Alabama to justify this court's assertion of *in personam* jurisdiction over the nonresident corporation. As the Fifth Circuit stated in *Product Promotions, Inc. v. Cousteau,*

> The operative consideration is that the defendant's contacts with the forum were deliberate, rather than fortuitous, so that the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable, if not forseen, rather than a surprise.

495 F.2d at 496. It is clear to this Court that this case rests on more than the "unilateral activities" of the plaintiff or third parties "claiming some relationship with a nonresident defendant." *Cf. Product Promotions,* 495 F.2d at 497. Here, as in *Product Promotions,* the cause of action arose out of a transaction between the defendants that was consummated in the forum and required substantial performance there. The Jamaican defendant did not become involved in the transaction fortuitously. On the contrary, Desnoes & Geddes voluntarily entered a transaction which, largely through its own affirmative arrangements, had a substantial connection with Alabama, and which the company had reason to know could cause it to be haled into court here. Having actively pursued the profits to be derived from deliberate contacts with Alabama, fairness dictates that Desnoes & Geddes be held to answer here for the consequences of its conduct. *Burger King v. MacShara,* 724 F.2d 1505, 1509 (11th Cir.1984). Particularly since so much of the transaction took place in Alabama, since one of the parties to the litigation is an Alabama corporation, and since Alabama law will surely be of some relevance in resolving the suit, the court is convinced that the maintenance of this suit against Desnoes & Geddes in Alabama will not offend "traditional notions of fair play and substantial justice." *Cf. International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Accordingly, the motion to dismiss for lack of personal jurisdiction is due to be overruled.

104 S.Ct. at 1874, n. 12, 80 L.Ed.2d at 413, n. 12. At any rate, jurisdiction in the present case is found to exist not on the mere fact of the purchases standing alone, but also on the basis of Desnoes & Geddes' other contacts with Alabama in connection with this transaction, including the contractual provision that delivery was to be made to Handel f.o.b. Buffalo Rock's Alabama plants; Desnoes & Geddes admitted intent that its purchase orders would be further negotiated and finalized in Alabama; the actions of Desnoes & Geddes' agents in Alabama; and so on. The *Helicopteros* decision simply does not address the jurisdictional question presented here.