David E. DANGERFIELD, d/b/a Dangerfield Potato Company, Plaintiff,

v.

BACHMAN FOODS, INC., a corporation, Defendant.

Civ. No. A2-80-92.

United States District Court, D. North Dakota, Northeastern Division.

June 26, 1981.

Patrick W. Fisher, Shaft, McConn, Fisher & Thune, Ltd., Grand Forks, N. D., for plaintiff.

Robert Vaaler, Vaaler, Gillig, Warcup, Woutat, Zimney & Foster, Grand Forks, N. D., for defendant.

## MEMORANDUM AND ORDER

BENSON, Chief Judge.

In the above entitled diversity action removed from state court, defendant has moved for dismissal of the case for lack of personal jurisdiction or, in the alternative, a dismissal on the basis of *forum non conveniens* or a transfer of venue pursuant to 28 U.S.C. § 1404(a). In his complaint, plaintiff, a North Dakota resident, alleges that he contracted with defendant, a Delaware corporation with its principal place of business in New York, in November, 1978, to deliver 15,000 hundredweight of bulk chipping potatoes, and that defendant breached the contract by making underpayments for potatoes delivered, and failing to take delivery for all the potatoes contracted for.

## PERSONAL JURISDICTION

Plaintiff's complaint contains no factual allegations supporting personal jurisdiction over defendant, a nonresident corporation. However, on a motion to dismiss for lack of personal jurisdiction it is proper for this court to examine affidavits and depositions to establish the jurisdictional facts. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); *Top Form Mills v. Sociedad Nationale Ind., Etc.*, 428 F.Supp. 1237, 1241 (S.D. N.Y.1977); *See* 5 Wright & Miller, Federal Practice and Procedure: Civil § 1351; 2A Moores Federal Practice ¶ 12.14.

Plaintiff bears the burden of proving defendant has maintained the minimum contacts necessary to enable the forum state to obtain personal jurisdiction over defendant. *Block Industries v. DHJ Industries, Inc.*, 495 F.2d 256, 259 (8th Cir. 1974); *Red River Transport, Etc. v. Custom Airmotive, Inc.*, 497 F.Supp. 425 (D.N.D.1980). When the determination is made from affidavits and discovery materials, the burden imposed upon the plaintiff in order to avoid a dismissal is to make a prima facie showing of jurisdictional facts. *See Data Disc, Inc. v. Systems Tech. Assoc. Inc.*, *supra* at 1286 n.2; *United States Ry. Equip. Co. v. Port Huron & Detroit R. Co.*, 495 F.2d 1127, 1128 (7th Cir. 1974). In determining whether such a showing has been made, the facts contained in plaintiff's affidavit are assumed to be true, and any dispute in the facts will be resolved in favor of plaintiff. *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir. 1971); *School District of Kansas City, Mo. v. State of Missouri*, 460 F.Supp. 421, 432 (W.D.Mo.1978), *appeal dismissed*, 592 F.2d 493 (8th Cir. 1979).[1]

---

1. If the plaintiff avoids dismissal by making a prima facie showing of jurisdictional facts, he must still prove the jurisdictional facts at trial by a preponderance of the evidence. *Data*

Applying the above standards, the following facts are adduced from the pleadings, the affidavits filed, and plaintiff's deposition.

Plaintiff is a potato broker residing and doing business in North Dakota. As a broker he buys potatoes from area farmers and for a profit arranges to resell them to third parties. Defendant is in the snack food business, and is a Delaware corporation with its principal place of business in New York. Defendant is not doing business in North Dakota nor is it authorized to do so. For two to four years prior to November, 1978, plaintiff and defendant conducted business together dealing with open market potatoes. Defendant had also purchased potatoes from at least two other businesses in North Dakota. Between the years of 1975 and 1978 defendant had a buyer who visited North Dakota on a number of occasions and who had met with plaintiff. Earlier in 1978, plaintiff had shipped some open market potatoes to defendant. Defendant telephoned plaintiff, informing him that it was pleased with the quality of potatoes it had received, and that it wished to enter into a contract. Defendant requested price quotations. As a result of the phone conversation plaintiff agreed to meet with defendant at defendant's offices in New Jersey on November 6, 1978. At the meeting the parties entered into an oral agreement for shipment of potatoes. When plaintiff returned to North Dakota he sent to defendant by mail a confirmation of the agreement. Defendant in turn mailed plaintiff a purchase order for 6 to 10 truckloads of potatoes to be shipped to defendant in Phoenixville, Pennsylvania. Plaintiff sent out four or five loads of potatoes from North Dakota before defendant refused to accept additional shipments. Further communication between plaintiff and defendant was accomplished by telephone or mail. Defendant had no representatives in North Dakota between November, 1978 and June,

1979, although in the fall of 1979, two of defendant's employees visited the area, looking at potatoes and meeting with growers.

■ Whether defendant is subject to the jurisdiction of this court involves a two-fold question. First, a determination must be made whether defendant is amenable to service of process under North Dakota's long-arm statute. This is a question of state law. *Pioneer Insurance Co. v. Gelt*, 558 F.2d 1303, 1309 (8th Cir. 1977); *Caesar's World, Inc. v. Spencer Foods, Inc.*, 498 F.2d 1176, 1179 (8th Cir. 1974). Secondly, the court must determine whether an assertion of jurisdiction under the long-arm statute is offensive to due process requirements. This question is one of federal law. *Arrowsmith v. United Press International*, 320 F.2d 219, 222–23 (2d Cir. 1963); *Vasquez v. Falcon Coach Co., Inc.*, 376 F.Supp. 815, 817 (D.N.D.1974).

North Dakota's long-arm rule is adopted from the Uniform Interstate and International Procedure Act. It provides in relevant part as follows:

(2) *Personal jurisdiction based upon contacts.* A court of this state may exercise personal jurisdiction over a person who acts directly or by an agent as to any claim for relief arising from the person's having such contact with this state that the exercise of personal jurisdiction over him does not offend against traditional notions of justice or fair play or the due process of law, under one or more of the following circumstances:

(A) transacting any business in this state;

. . . .

(3) *Limitation on jurisdiction based upon contacts.* If jurisdiction over a person is based solely upon paragraph (2) of this subdivision, only a claim for relief arising from bases enumerated therein may be asserted against him.

*Disc, Inc. v. Systems Tech. Assoc., Inc., supra* at 1286 n.2; *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977); *Milligan v. Anderson*, 522 F.2d 1202, 1207 (10th Cir. 1975); *O'Hare International Bank v.*

*Hampton, supra* at 1177 n.2; *United States v. Montreal Trust Company*, 358 F.2d 239, 242 n.2 (2d Cir. 1966), *cert. denied*, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966).

N.D.R.Civ.P. 4. Even before Rule 4 was amended to include the constitutional due process standard within the words of the rule, the North Dakota Supreme Court had held that the rule was to be interpreted to permit the state courts to exercise personal jurisdiction to the fullest extent permitted by due process. *Hebron Brick Co. v. Robinson Brick & Tile Co.*, 234 N.W.2d 250, 255 (N.D.1975).

■ The phrase in the rule, "transacting any business in this state," has received little, if any, attention from North Dakota courts. However, in the *Hebron Brick* decision, the court held that in defining the scope of Rule 4, it was guided by the rulings of the Michigan courts considering that state's long-arm statute which is the origin of the uniform act from which North Dakota's rule was derived. Therefore, this court is also so guided. In reviewing the decisions from that jurisdiction, the court notes that the concept of "transacting *any* business" includes "each" and "every" business transaction. *Sifers v. Horen*, 385 Mich. 195, 188 N.W.2d 623, 624 n.2 (1971). It requires no more than a single act of purchasing. *Crane v. Rothring*, 27 Mich.App. 189, 183 N.W.2d 434, 435 (1970). Furthermore, one need not be physically present in the state to "transact business within the state," and a contract consummated by telephone and the mails will suffice. *Stan Sax Corp. v. Siefen Compounds, Inc.*, 68 Mich.App. 768, 243 N.W.2d 724, 725 (1976).

The all expansive reach of the phrase "transacting any business" is well illustrated in *Kiefer v. May*, 46 Mich.App. 566, 208 N.W.2d 539 (1973). There, defendant, an Arizona resident, placed an advertisement in a national publication circulated in Michigan for the sale of a 1931 Cadillac. Plaintiff, a resident of Michigan, responded by calling defendant in Arizona. In the phone conversation defendant represented the automobile to be complete and the agreement to purchase the car was reached. Plaintiff sent part payment to defendant by wire, and later sent a truck to Arizona to pick up the vehicle. When the automobile arrived in Michigan, plaintiff found it to be not as represented and brought suit in Michigan. Under these facts, and applying the Michigan cases previously cited, the court found that defendant transacted business within the state.

This court concludes that on the basis of the record before the court, a North Dakota court would find defendant to have transacted business within the state for purposes of the long-arm rule if such a result would comply with due process requirements.

In determining whether application of North Dakota's long-arm statute to the facts of this case offends due process, it is necessary to inquire whether the nonresident defendant has sufficient minimum contacts with the forum state so as to comply with traditional notions of fair play and substantial justice, see *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); whether defendant has invoked the benefits and protections of North Dakota laws by its activities there, see *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); and, because the case involves a contract dispute, whether the contract has substantial connection with the forum state. See *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); *Caesar's World, Inc. v. Spencer Foods, Inc., supra* at 1180.

The courts have not been uniform in addressing the question of when personal jurisdiction can constitutionally be exercised in contract actions. This is perhaps partly due to the fact that the Supreme Court's recent pronouncements on personal jurisdiction have not addressed that issue. In dissenting to a recent denial of a writ of certiorari, Justice White, joined by Justice Powell noted that the question of personal jurisdiction over a nonresident corporate defendant based on contractual dealings with a resident plaintiff has deeply divided the federal and state courts. *Lakeside Bridge & Steel Co. v. Mountain States Construction Co., Inc.*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980) (White, J., dissenting from denial of writ of certiorari). Nevertheless, until

the conflict is resolved, this court is guided by the Eighth Circuit Court of Appeal's pronouncements on the issue.

The Eighth Circuit has set out five general factors to be considered in determining whether assertion of personal jurisdiction complies with due process. They are as follows:

(1) the nature and quality of the contacts with the forum state;

(2) the quantity of contacts with the forum state;

(3) the relation of the cause of action to the contacts;

(4) the interest of the forum state in providing a forum for its residents; and

(5) the convenience of the parties.

See *Toro Co. v. Ballas Liquidating Co.*, 572 F.2d 1267, 1270 (8th Cir. 1978); *Aaron Ferer & Sons Co. v. Atlas Scrap Iron*, 558 F.2d 450, 453 (8th Cir. 1977); *Red River Transport v. Custom Airmotive, Inc.*, supra at 428; *Shern v. Tractor Supply Co. of Grand Forks*, 381 F.Supp. 1331, 1335–36 (D.N.D. 1974). The first three factors are of primary concern, the last two factors are of secondary concern. *Toro Co., supra* at 1270. These factors do not establish a mathematical formula, but rather provide a general guide in applying the abstract concept of due process, and it is clear that each question of personal jurisdiction must be decided on an ad hoc basis depending upon the particular facts and circumstances of each case. *Gardner Engineering Corp. v. Page Engineering Co.*, 484 F.2d 27, 31 (8th Cir. 1973).

Several courts have recognized a distinction between a resident buyer suing a nonresident seller as opposed to a resident seller suing a nonresident buyer, and that it may be more difficult to establish personal jurisdiction in the latter situation. *See e. g., Whittaker Corporation v. United Aircraft Corporation*, 482 F.2d 1079, 1085 (1st Cir. 1973); *Sporcam, Inc. v. Greenman*

*Bros., Inc.*, 340 F.Supp. 1168, 1178 (S.D.Iowa 1972); *McQuay, Inc. v. Samuel Schlosberg, Inc.*, 321 F.Supp. 902, 907 (D.Minn.1971); *Geneva Industries, Inc. v. Copeland Construction Corp.*, 312 F.Supp. 186, 188 (N.D. Ill.1970); *Oswalt Industries, Inc. v. Gilmore*, 297 F.Supp. 307, 312–13 (D.Kansas 1969); *Al-Jon, Inc. v. Garden St. Iron & Metal*, 301 N.W.2d 709, 714 (Iowa 1981); *Rath Packing Co. v. Intercontinental Meat Traders, Inc.*, 181 N.W.2d 184, 188 (Iowa 1970); *Fourth Northwestern National Bank of Minneapolis v. Hilson Industries, Inc.*, 264 Minn. 110, 117, 117 N.W.2d 732, 736 (1962). One reason for the distinction has been stated as follows:

In our economy the seller often initiates the deal, tends to set many, if not all of the terms on which it will sell, and, of course, bears the burden of producing the goods or services, in the course of which production injuries and other incidents giving rise to litigation frequently arise. The buyer, on the other hand is frequently a relatively passive party, simply placing an order, accepting the seller's price and terms as stated in his product advertising and agreeing only to pay a sum upon receipt of the goods and services. It is understandable that sellers more often seem to have acted in a manner rendering them subject to long-arm jurisdiction.

*In-Flight Devices Corporation v. Van Dusen Air, Inc.*, 466 F.2d 220, 233 (6th Cir. 1972).

While this distinction was considered in *Electro-Craft Corp. v. Maxwell Electronics Corp.*, 417 F.2d 365, 368 (8th Cir. 1969), it was because the state court had considered it a factor in previous decisions in construing its long-arm statute. As the court in *In-Flight Devices, supra* noted,

[t]he mere fact that a buyer is the defendant in a long-arm situation should not preclude an assertion of jurisdiction over such defendant, however.... To the extent the buyer vigorously negotiates, perhaps dictates, contract terms, inspects production facilities and otherwise

departs from the passive buyer role it would seem that any unfairness which would normally be associated with the exercise of long-arm jurisdiction over him disappears.... The buyer/seller distinction may have value in general, but only to the extent it is used as a short-hand means of expressing the differences between passive and active involvement in a transaction.

466 F.2d at 233 (citations omitted). This was recognized in *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211 (8th Cir. 1977), where the court held that when considering the federal due process issue, "the ultimate test is whether the defendant, either as *seller* or *buyer*, has performed 'some act by which [it has] purposefully [availed] itself of the privilege of conducting activities within the forum state thus invoking the benefits and protections of its laws.'" *Id.* at 1214–15 (emphasis added).

The court is of the opinion that defendant in this case is more than merely a passive purchaser. The court places principal reliance upon *Electro-Craft Corp. v. Maxwell Electronics Corp., supra* at 368–69, because the court therein set out various factors which it found relevant in determining that defendant had minimum contacts with the forum state and that personal jurisdiction existed. Many if not all the factors are present here, and some are present here which were not present in that case.

The court views the quality and quantity of defendant's contacts with North Dakota to be sufficient in the following respects:

(a) Prior to the consummation of the contract, defendant sent a buyer into North Dakota who met with plaintiff. These visits by defendant's agents, at least in part, led up to the contract involved in this litigation.

(b) The defendant purposely availed itself of the privilege of doing business with a North Dakota resident. It entered into a transaction having an impact on the commerce of that state. By so doing, it invoked the benefit and protection of North Dakota's laws and could have reasonably anticipated that its act would have consequences in North Dakota.

(c) Defendant initiated negotiations with the plaintiff.

(d) While the contract was consummated in New Jersey, contractual consequences were reasonably anticipated in North Dakota.

(e) The defendant knew that the potatoes would be directly shipped from a North Dakota resident.

(f) The defendant made full use of the means of interstate commerce to complete the contract, such as the mails and telephone system.

(g) The transaction was a significant one, involving 15,000 hundredweight of potatoes.[2]

The cause of action in this case arose out of defendant's contacts with North Dakota. Furthermore, North Dakota has an interest in providing a forum for its resident under the circumstances of this case. Finally, the convenience of the parties is not a consideration weighing in favor of either party.

█ The court holds that a North Dakota court would find that defendant transacted business within the state and is amenable to process under the long-arm statute. The court also holds that the contract entered into between the parties has a substantial connection to North Dakota and that the maintenance of a suit thereon in the forum state does not offend traditional notions of fair play and substantial justice.

---

**2.** In *Electro-Craft, supra*, a plaintiff buyer was suing a nonresident defendant seller. But as was stated in *Aaron Ferer, supra*, this distinction is not controlling. Additionally in *Electro-Craft*, defendant never had an agent in the forum state and it was plaintiff who initiated the negotiations for the contract. Yet, otherwise relying on the same factors outlined in the text above, the court found no due process violation in holding defendant amenable to service in the forum state.

## VENUE

■ Defendant argues that if this court finds personal jurisdiction over it, the court should dismiss the action on the basis of *forum non conveniens*, since the proper forum in which to bring the action is New York, defendant's principal place of business, or Pennsylvania, where the potatoes were shipped. Generally stated, the doctrine of *forum non conveniens* allows a court, in the exercise of sound discretion, to decline to assume jurisdiction over a case when it believes that the case may more conveniently proceed in another available forum. *See generally* 20 Am.Jur.2d *Courts* § 173 (1965). The doctrine has been codified in North Dakota in N.D.R.Civ.P. 4(b)(5), which provides "[i]f the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any condition that may be just." *See Lumber Mart, Inc. v. Haas Intern. Sales & Serv.*, 269 N.W.2d 83, 88 (N.D.1978).

■ Assuming *arguendo* that a federal court in New York or Pennsylvania would be a more convenient forum, dismissal of this case would not be proper. Where the more convenient forum is a federal court, the doctrine of *forum non conveniens* resulting in dismissal of the action is not applicable, but rather the exclusive remedy is through the transfer provisions of 28 U.S.C. § 1404(a). *See Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955); *Harbolt v. Carpenter*, 536 F.2d 791, 792 (8th Cir. 1976); *Collins v. American Automobile Insurance Company*, 230 F.2d 416, 418 (2d Cir. 1956), *cert. dismissed*, 352 U.S. 802, 77 S.Ct. 20, 1 L.Ed.2d 37 (1956); *Mars, Incorporated v. Standard Brands, Inc.*, 386 F.Supp. 1201, 1204 (S.D.N.Y.1974); *B. M. Heede, Inc. v. West India Machinery and Supply Co.*, 272 F.Supp. 236, 241 (S.D.N.Y.1967); *Rodriguez v. American Export Lines, Inc.*, 253 F.Supp. 36, 37 (E.D. Penn.1966); *Lapides v. Doner*, 248 F.Supp. 883, 894 (E.D.Mich.1965). *See generally* Annot., 10 A.L.R.Fed. 352 (1972); 15 Wright & Miller, Federal Practice and Procedure § 3828.

■ Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In any determination of a transfer request, a plaintiff's choice of a proper forum is a primary consideration and this choice will not be disturbed unless the balance of inconvenience is strongly in favor of the movant. *Shutte v. Armco Steel Corporation*, 431 F.2d 22, 25 (3rd Cir. 1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1970); *Akers v. Norfolk & Western Railway Co.*, 378 F.2d 78, 80 (4th Cir. 1967); *A. Olinick and Sons v. Dempster Bros., Inc.*, 365 F.2d 439, 444 (2d Cir. 1966); *Vasquez v. Falcon Coach Co., Inc.*, 376 F.Supp. 815, 823 (N.D.1974); *Owatonna Manufacturing Company v. Melroe Company*, 301 F.Supp. 1296, 1307 (D.Minn.1969).

■ Defendant has submitted an affidavit of its Assistant General Counsel, which contains assertions relating to defendant's lack of contact with North Dakota and that it would be inconvenient for important defense witnesses to travel to North Dakota. However, the same factors which the court has already deemed to support personal jurisdiction over defendant also bear against the transfer of this action. The plaintiff resides in North Dakota. The potatoes were shipped from North Dakota and witnesses who can testify concerning the condition of the potatoes upon their departure reside in the state. In short, defendant has not indicated how its witnesses would be any more inconvenienced than plaintiff's witnesses would be if the action was transferred. A mere showing of inconvenience to the defendant is not enough to warrant transfer where it would merely shift the expense and inconvenience to the other party. *Dayton Power & Light Co. v. East Ky. Power Co-op.*, 497 F.Supp. 553, 555 (E.D.Ky.1980); *Magnavox Co. v. APF Electronics, Inc.*, 496 F.Supp. 29, 34 (N.D.Ill.1980); *Oce'-Industries, Inc. v. Cole-*

*man,* 487 F.Supp. 548, 553 (N.D.Ill.1980); *Stinnett v. Third Nat. Bank of Hampden Cty.,* 443 F.Supp. 1014, 1017 (D.Minn.1978). Therefore, transfer of this case as requested by defendant is not warranted.

IT IS ORDERED that defendant's motion to dismiss plaintiff's complaint for lack of personal jurisdiction is denied.

IT IS FURTHER ORDERED that defendant's motion to dismiss the complaint on the basis of *forum non conveniens* is denied.

IT IS FURTHER ORDERED that defendant's motion to transfer the case is denied.